UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| WILLIAM HOLLAND, JR.,<br><br>    Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>    Defendant. | Case No. ED CV 15-0408-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff William Holland, Jr. ("Plaintiff") appeals from the final decision of the Administrative Law Judge ("ALJ") denying his applications for Social Security disability benefits. On appeal, the Court concludes that the ALJ properly considered the medical evidence of record. Therefore, the ALJ's decision is affirmed and the matter is dismissed with prejudice.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed applications for disability insurance and supplemental security income benefits on March 8, 2012, alleging disability beginning July 31, 2009. Administrative Record ("AR") 11, 213-26. After Plaintiff's applications were denied, he requested a hearing before an ALJ. AR 11, 150.

On October 8, 2013, Plaintiff, who was represented by counsel, appeared and testified at the hearing. AR 11, 24-61. The ALJ also called a vocational expert ("VE") to testify about what work Plaintiff could perform despite his limitations. AR 45-61. The ALJ gave the VE a series of hypotheticals as to whether Plaintiff could perform his past work as well as other work in the national economy. AR 47-51. When asked by Plaintiff's counsel about the maximum amount of time an individual could miss from work, the VE responded that, "[a]t four hours per week[,] an individual is no longer employable." AR 54-55.

On November 13, 2013, the ALJ issued an unfavorable decision. AR 8-23. In reaching his decision, the ALJ found that Plaintiff had the severe impairments of leg pain post gunshot wound; hypertension; post-traumatic stress disorder; back strain; osteoarthritis; mood disorder; alcohol abuse; and history of substance abuse. AR 14. The ALJ determined that despite his impairments, Plaintiff had the residual functional capacity ("RFC") to perform medium work except that "postural activities are limited to a frequent basis" and Plaintiff is further "limited to non-public unskilled entry level work involving simple repetitive tasks, in a habituated setting, with minimal interaction with coworkers and supervisors." AR 15. Based on the VE's testimony, the ALJ found that Plaintiff could perform his past relevant work as a warehouse stocker because that work does not require activities precluded by Plaintiff's RFC. AR 19. On that basis, the ALJ determined that Plaintiff was not entitled to a finding of disability. Id.

## II.
## ISSUE PRESENTED

The parties dispute whether the ALJ properly considered the medical evidence of record. See Joint Stipulation ("JS") at 3-4. Plaintiff argues that the ALJ disregarded the limitations set forth by the psychological consultative

examiner and treating psychiatrist by not including in his RFC that Plaintiff would require in excess of four hours of unscheduled work breaks per week. Id. at 7. Plaintiff contends that, given the VE's testimony, see AR 54-55, this additional restriction would "render him unemployable." JS at 7.

### III.
### DISCUSSION

**A. Relevant Law**

Three types of physicians may offer opinions in Social Security cases: those who directly treated the plaintiff, those who examined but did not treat the plaintiff, and those who did not treat or examine the plaintiff. See 20 C.F.R. §§ 404.1527(c), 416.927(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended). A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a non-examining physician. Lester, 81 F.3d at 830. Thus, the ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion or an examining physician's opinion in favor of a non-examining physician's opinion. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998)); Lester, 81 F.3d at 830-31 (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir.1983)). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. See Lester, 81 F.3d 821, 830 (9th Cir. 1996) (citing Baxter v. Sullivan, 923 F.3d 1391, 1396 (9th Cir. 1991)). However, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The factors to be considered by the adjudicator in determining the weight to

give a medical opinion include: "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. Orn, 495 F.3d at 631; see also 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), 416.927(d)(2)(i)-(ii).

**B.     Background**

On July 24, 2012, clinical psychologist Dr. Robert A. Marselle performed a psychological evaluation of Plaintiff. AR 386-93. Plaintiff told Dr. Marselle that he is constantly having pain, flashbacks, and nightmares, and has difficulty sleeping due to bad dreams. AR 387. Plaintiff said that "he gets frustrated easy and he gets angry quick with people." Id. Plaintiff stated that he believes his "main problem" to be pain and anxiety, and he also has problems concentrating. AR 387. Dr. Marselle performed several tests on Plaintiff, all of which were judged to be valid. AR 386, 389-92. Based on his examination and Plaintiff's test results, Dr. Marselle concluded:

> [Plaintiff] would have no impairment in understanding, remembering, and carrying out short, simple instructions. In addition, his ability to understand, remember, and carry out detailed instructions in unimpaired. [Plaintiff] is unimpaired in his ability to make judgments on simple, work-related decisions. [Plaintiff] would have mild difficulty in relating appropriately to the public, supervisors, and co-workers. [Plaintiff's] ability to withstand the stress and changes associated with an eight-hour workday and day-to-day work activities in moderately impaired.

AR 392.

In October 2012, Plaintiff began receiving mental health treatment and was diagnosed with anxiety and depression. AR 17, 458. On June 8, 2013, Plaintiff's treating psychiatrist, Dr. Trust Hf, completed a circle-all-that-apply

4

"narrative report." AR 490. Dr. Hf indicated that Plaintiff experiences auditory hallucinations that influence his actions or behaviors. Id. Dr. Hf also indicated that Plaintiff did not have the ability to maintain a sustained level of concentration, sustain repetitive tasks for an extended period, or adapt to new or stressful situations. Id. Dr. Hf further indicated that Plaintiff did not have the ability to interact appropriately with family, strangers, co-workers, supervisors, and other authority figures. Id. Dr. Hf opined that Plaintiff would have difficulty keeping appointments and would not be able to complete a forty-hour work week without decompensating. Id. Dr. Hf assessed Plaintiff's prognosis as "chronic." Id.

In his decision, the ALJ discussed the opinions of both Dr. Marselle and Dr. Hf as follows:

> In view of the record as a whole, the undersigned neither adopts the opinion of Dr. Marselle, nor give[s] significant weight to the opinions in the treatment records as noted above. Rather, the undersigned finds the evidence to support limitations to a degree that is essentially mid-way between the opposing opinions of Dr. Marselle and the treatment records. This is also more consistent with the opinions of the State agency medical consultants, who assessed [Plaintiff] as capable of performing at least unskilled non detailed tasks in a non-public setting [citations omitted]. Despite some low GAF scale scores [Plaintiff's] mental status examinations and daily activities are consistent with the residual functional capacity as found.
>
> Of the opinion evidence as above, the undersigned gives the greater weight to the opinions of the State agency consultant in view of the consistency to the overall record, but rejects the opinions as noted in the treatment notes as being excessive and

poorly supported.
AR 17-18.

## C. Analysis

### 1. Opinion of the Psychological Consultative Examiner

Plaintiff first argues that Dr. Marselle's conclusion that "he would be moderately limited in his ability to handle the stress and changes associated with a normal 8 hour work day and day to day work activities is consistent with the opinions of the treating psychiatrist Dr. H[f] who concluded that [Plaintiff] was not capable of completing a normal 40 hour work week without decompensating because of his mental conditions." JS at 5. However, Plaintiff fails to present any legal support for his restrictive definition of "moderately limited."

The Social Security regulations do not provide a standard definition of the term "moderate." Serna v. Astrue, No. 08-01673, 2008 WL 5179033, at *3 (C.D. Cal. Dec. 9, 2008) (citing 20 C.F.R. § 416.902a(c)(4)); Stenson v. Astrue, No. 11-1054, 2012 WL 1154400, at *8 (S.D. Cal. Mar. 15, 2012). Nevertheless, courts have held that a plaintiff "found to have a moderate limitation in her ability to respond appropriately to work pressures in a usual work setting would still be able to satisfactorily function in this area." Serna, 2008 WL 5179033 at *3 (citing Lacroix v. Barnhart, 465 F.3d 881, 888 (8th Cir. 2006)); see also Arriola v. Astrue, No. 08-00249, 2008 WL 4926961, at *4 (C.D. Cal. Nov. 14, 2008) (noting that "moderate" is "more than a slight limitation in this area but the individual is still able to function satisfactorily"). Moreover, courts in the Ninth Circuit have found that "[m]oderate mental functional limitations—specifically limitations in social functioning and adaptation—are not per se disabling, nor do they preclude the performance of jobs that involve simple, repetitive tasks." McLain v. Astrue, No. 10-1108, 2011 WL 2174895, at *6 (C.D. Cal. June 3, 2011); see, e.g., Koehler v. Astrue, 283 F. App'x 443,

445 (9th Cir. 2008) (holding that ALJ's finding that plaintiff lacked a severe mental impairment was proper despite "diagnosis of a 'moderate' degree of limitation in one's ability to respond to changes in the workplace setting"); Rogers v. Comm'r of Soc. Sec., No. 09-1972, 2011 WL 445047, at *12 (E.D. Cal. Jan. 25, 2011) (find that ALJ's limitation to simple, repetitive work captured moderate limitations in social functioning).

Here, the ALJ did not ignore Dr. Marselle's opinion that Plaintiff was "moderately impaired" in his "ability to withstand the stress and changes associated with an eight-hour workday and day-to-day work activities" in assessing his RFC. See AR 392. The ALJ noted in his decision that Plaintiff was credited with "moderate difficulties" with regard to social functioning, concentration, persistence or pace. AR 14. In discussing Dr. Marselle's evaluation, the ALJ acknowledged that Plaintiff's "ability to withstand the stress and changes associated with an ordinary work day was moderately impaired." AR 17. Based on the ALJ's statement that he found "the evidence to support limitations to a degree that is essentially mid-way between the opposing opinions of Dr. Marselle and the treatment records," AR 17, it is clear that the ALJ interpreted Dr. Marselle's use of "moderate" to mean that Plaintiff could still function satisfactorily in the work-setting.

Indeed, a review of Dr. Marselle's evaluation supports the ALJ's conclusion that Plaintiff's limitations are not disabling. Dr. Marselle noted that Plaintiff "was cooperative and his behavior was friendly and appropriate." AR 387. Dr. Marselle also noted that Plaintiff had never sought treatment from a mental health care professional nor had he been admitted to a psychiatric hospital. Id. Dr. Marselle further noted that Plaintiff had held a job for twenty years and reported that "[h]e got along with people in the workplace very well." AR 388. Dr. Marselle observed that Plaintiff's thought processes were linear and goal-directed, that Plaintiff's attention was unimpaired, and that his

concentration was adequate for conversation and time-limited assessment tasks. AR 389. Additionally, Dr. Marselle indicated that Plaintiff's fund of knowledge was good and his insight appeared to be intact. Id. Finally, Dr. Marselle noted that Plaintiff demonstrated no impairment in social and common sense understanding. Id. Given that the record supports the ALJ's conclusion that Plaintiff could still respond appropriately to changes in the work setting at a satisfactory level, the ALJ did not err in omitting that limitation from his RFC.

In addition, it is the ALJ's province to synthesize the medical evidence. See Lingenfelter v. Astrue, 504 F.3d 1028, 1042 (9th Cir. 2007) ("When evaluating the medical opinions of treating and examining physicians, the ALJ has discretion to weigh the value of each of the various reports, to resolve conflicts in the reports, and to determine which reports to credit and which to reject."); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 603 (9th Cir. 1999) (holding that ALJ was "responsible for resolving conflicts" and "internal inconsistencies" within doctor's reports). Where, as here, the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). Therefore, remand is not warranted on this basis.

### 2. Opinion of the Treating Psychiatrist

Plaintiff next argues that "the ALJ's attempt to discredit and disregard the opinions of the treating psychiatrist, Dr. H[f], is completely invalid and unsubstantiated by the evidence of record." JS at 6. The Court disagrees.

The record reflects that the ALJ gave specific and legitimate reasons for discounting Dr. Hf's opinion, each of which is supported by substantial evidence in the record. First, Dr. Hf did not offer any clinical test findings in support of his opinion other than Global Assessment of Functioning ("GAF")

scores ranging from 31 to 50.[1] AR 17 (citing AR 458, 476, 491). The ALJ found that Plaintiff's GAF scores were of "limited evidentiary value" and "inconsistent with the longitudinal treatment records." AR 17. Importantly, the Commissioner has declined to endorse GAF scores, Fed. Reg. 50764-65 (Aug. 21, 2000) (GAF score "does not have a direct correlation to the severity requirements in our mental disorders listings"), and the most recent edition of the DSM "dropped" the GAF scale, citing its lack of conceptual clarity and questionable psychological measurements in practice. Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2012). The ALJ also indicated that Plaintiff's GAF scores were inconsistent with his mental status examinations, which recorded him "as having appropriate appearance, mood and affect; normal and goal directed thought processes; as alert, oriented and able to concentrate; and as having normal judgment and insight." AR 17; see, e.g., AR 452, 460, 469-70, 477, 478, 479, 481. Thus, the ALJ properly discredited Dr. Hf's opinion because it was inconsistent with the medical evidence and lacked supportive clinical findings. See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (finding discrepancy between treatment notes and doctor's opinion "a clear and convincing reason for not relying on the doctor's opinion"); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by record as a whole, or by objective medical findings).

---

[1] A GAF score of 31-40 is indicative of some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. See Diagnostic and Statistical Manual of Mental Disorders 34 (revised 4th ed. 2000) ("DSM IV"). A GAF score of 41 to 50 is consistent with serious symptoms or any serious impairment in occupational, social, or school functioning. Id.

Second, the ALJ found that "the opinions as noted in the treatment notes [were] excessive and poorly supported." AR 18. As the ALJ observed, the treatment notes primarily consisted of check-box and fill-in-the-blank examinations that were "essentially unremarkable except for the notation as to [Plaintiff] having obsessions/preoccupations of thought content." AR 17 (citing AR 452, 479, 481). Similarly, Dr. Hf's "narrative report" failed to provide any explanation for his findings of extreme mental limitations and his opinion that Plaintiff could not sustain a 40-hour work week without decompensating. AR 490. As the ALJ noted, the June 2013 report is a single page in which Dr. Hf circled preprinted choices and did not provide any elaboration or explanation for his opinions. See AR 17. Accordingly, it was reasonable for the ALJ to discount Dr. Hf's opinions on this basis. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." (citing Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)); Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (holding that ALJ permissibly rejected psychological evaluations "because they were check-off reports that did not contain any explanation of the bases of their conclusions").

Next, the ALJ noted that Dr. Hf's opinion was contradicted by the opinion of Dr. Marselle, whose opinion was more consistent with that of the reviewing State Agency medical consultants and the record as a whole. AR 17-18. As an example, the ALJ noted that "the reporting as to [Plaintiff] experiencing auditory hallucinations is contradicted by the evaluation of Dr. Marselle which indicates that [Plaintiff] denied having auditory or visual hallucinations." AR 17 (citing AR 387). Plaintiff points to various notes in his treatment records that indicate he was experiencing voices and auditory hallucinations, AR 477-80, and argues that the ALJ erred in discrediting Dr.

Hf's opinion on this basis. JS at 6-7. In addition to Plaintiff "den[ying] auditory or visual hallucinations," AR 387, Dr. Marselle observed that Plaintiff "exhibited no evidence of auditory or visual hallucinations, delusions, or illusions," AR 389. Indeed, there is no evidence in the record that Plaintiff experienced hallucinations before he began receiving mental health treatment in October 2012. Additionally, all of the notes that Plaintiff was experiencing auditory hallucinations appear to have been based entirely on Plaintiff's self-reports. Because the ALJ found Plaintiff to be not fully credible, a finding which Plaintiff does not challenge, the ALJ was entitled to discount Dr. Hf's opinion on that basis. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (holding that a "physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted" (internal quotation marks omitted)). Moreover, even if the Court assumes that the ALJ erred here, any error would be harmless because the other reasons given by the ALJ for discounting Dr.Hf's opinion were supported by substantial evidence in the record. See Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012) ("We have long recognized that harmless error principles apply in the Social Security Act context.") (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006))).

For example, the ALJ noted, and Plaintiff did not discuss, that Dr. Hf's report that Plaintiff was "unable to maintain a sustained level of concentration," see AR 490, was inconsistent with Plaintiff's "performance on the examination of Dr. Marselle which reflected the ability to sustain attention and concentration sufficient to complete a battery of psychological tests," see AR 389-92. AR 17; see Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (nontreating physician's opinion constituted substantial evidence where it was supported by "objective clinical tests"). Also, for the reasons discussed

above in Section III.C.1, the Court is not persuaded by Plaintiff's contention that Dr. Hf's conclusion that Plaintiff "would not be capable of completing a normal 40 hour work week without decompensating[] is generally consistent with" Dr. Marselle's finding of moderate limitation in his ability to respond appropriately to work pressures. See JS at 6. Indeed, the extreme functional limitations found by Dr. Hf were unsupported by any findings made by any physician. Because the opinions of Dr. Marselle and the reviewing State Agency consultants were more consistent with the medical evidence as a whole, the ALJ permissibly gave less weight to Dr. Hf's opinion. See Thomas, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

Finally, the ALJ found that Plaintiff's descriptions of his activities reflect that he "is more functional than as reported in the treatment notes." AR 17. For example, the ALJ noted that Plaintiff "conveyed that he was able to do household chores, run errands, cook, drive and dress and bathe himself, and his daily routine included spending the day looking for ways to get money to eat and a place to sleep." Id.; see, e.g., AR 388. The ALJ could reasonably conclude that Dr. Hf's opinions regarding Plaintiff's limitations were "inconsistent with [Plaintiff's] level of activity." See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001). Accordingly, the ALJ did not err in affording less weight to Dr. Hf's opinions on this ground.

Based on the foregoing, the Court concludes that the ALJ gave specific and legitimate reasons, each of which is supported by substantial evidence in the record, for assigning little weight to Dr. Hf's opinion regarding Plaintiff's workplace limitations. Plaintiff is therefore not entitled to relief.

///
///

## IV.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: March 4, 2016

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge